Marika R. Athens (AK Bar No. 0411096)
Assistant Attorney General
Department of Law
Office of Special Prosecutions and Appeals
310 K St., Suite 308
Anchorage, Alaska 99501
Telephone: 907-269-6250
Facsimile: 907-269-7939
Email: marika.athens@alaska.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| AMERICAN BOOKSELLERS FOUNDATION FOR FREE EXPRESSION; AMERICAN CIVIL LIBERTIES UNION OF ALASKA; ASSOCIATION OF AMERICAN PUBLISHERS, INC.; COMIC BOOK LEGAL DEFENSE FUND; ENTERTAINMENT MERCHANTS ASSOCIATION; FREEDOM TO READ FOUNDATION; DAVID & MELISSA LLC d/b/a Fireside Books; BOOK BLIZZARD LLC d/b/a Title Wave Books; BOSCO'S, INC.; DONALD R. DOUGLAS d/b/a Don Douglas Photography; and ALASKA LIBRARY ASSOCIATION, <br><br> Plaintiffs, <br><br> v. <br><br> DANIEL S. SULLIVAN, in his official capacity as ATTORNEY GENERAL OF THE STATE OF ALASKA <br><br> Defendant. | CIVIL ACTION NO.: <br><br> 3:10-cv-00193-RRB |

**OPPOSITION TO MOTION FOR A PRELIMINARY INJUNCTION**

The Alaska State Legislature amended AS 11.61.128 to add an additional requirement to the crime of electronic distribution of indecent material to minors. Whereas the previous statute

only required the State to prove the distribution of indecent material to minors, the amended statute requires the State to also prove that this indecent material was harmful to minors. The additional requirement narrows the statute's scope, rather than the overbreadth alleged by the Plaintiffs. Additionally, recognizing the reality of the world we currently live in, the Legislature applied this statute to all means of distribution, and not just which is done via a computer. After all, predators are equally able to groom children for sexual abuse whether they are shown pornography on a computer or on a piece of paper.

At the outset, it is important identify all of the elements of AS 11.61.128. It does not merely outlaw material that is harmful to minors. Rather, for a person to commit this crime, three separate elements must be met. First, the adult must knowingly distribute to another person material that depicts specific enumerated conduct. This conduct is limited to: (a) sexual penetration; (b) the lewd touching of a person's genitals, anus, or female breast; (c) masturbation; (d) bestiality; (e) the lewd exhibition of a person's genitals, anus, or female breast; or (f) sexual masochism or sadism. The "knowingly" element applies to knowledge of the content of the materials as well.

Second, and only if the material fits into one of the enumerated categories and the distributor knows this, the material must be harmful to minors. For the material to be harmful to minors, there is a second test where the material must satisfy all three prongs to be found harmful to minors. The first prong requires that the average person, applying contemporary community standards, would find that the material as a whole appeals to the prurient interest in sex for persons under 16 years of age. The second prong requires that this reasonable person would find that the material as a whole lacks serious literary, artistic, educational, political, or scientific value for these young people. The third prong requires that this material depict the conduct in a

Opposition to Motion for Preliminary Injunction
*American Booksellers Foundation for Free Expression et al v. Sullivan*
U.S. District Court of Alaska No. 3:10-cv-00193-RRB
Page 2 of 17

way that is patently offensive to the prevailing standards in the adult community as to what is suitable for these young people.

If both the first two elements of AS 11.61.128 are proven, then the minor must either actually be under 16 years of age or the adult must believe that the person is under 16 years of age. These three elements must be read in conjunction with one another to determine the constitutionality of the statute as a whole. Only focusing on whether the material is harmful to minors ignores the narrowing aspects of the other elements.

Because the amended statute actually narrows the original statute and none of the plaintiffs were harmed by the original statute, the plaintiffs will not suffer harm if the injunction is denied. In contrast, AS 11.61.128 is crucial for the State to provide law enforcement the tools necessary to protect Alaskan youth from the harmful grooming by sexual predators.

## ARGUMENT

### I. Plaintiffs Do Not Meet The Standard for a Preliminary Injunction

Preliminary injunctions are extraordinary remedies that should never be awarded as of right. *Winter v. Natural Res. Def. Council, Inc.*, 129 S.Ct. 365, 376 (2008). A plaintiff seeking such an extraordinary remedy must establish four factors: (a) a likelihood of success on the merits; (b) a likelihood of irreparable harm if the injunction is denied; (c) that without an injunction, the balance of equities tips in his favor; and (d) the injunction is in the public's interest. *Id.* at 374. If there are serious questions going to the merits and the hardship balance tips sharply toward the plaintiff and the other two elements are met, the court may also grant the injunction. *Alliance for Wild Rockies v. Cottrell*, 2010 WL 2926462 at *4. Additionally, any public interest in protecting First Amendment privileges may be "overcome by a strong showing of other competing interests, especially where the First Amendment activities of the public are

Opposition to Motion for Preliminary Injunction
*American Booksellers Foundation for Free Expression et al v. Sullivan*
U.S. District Court of Alaska No. 3:10-cv-00193-RRB
Page 3 of 17

only limited, rather than entirely eliminated." *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir. 2002).

Facial challenges to statutes are generally disfavored because they require the court to "resolve questions of constitutionality with respect to each potential situation that might develop." *Gonzales v. Carhart*, 550 U.S. 124, 168 (2007)(determining that as-applied attacks to the Partial Birth Abortion Ban Act of 2003 were more appropriate than the proposed facial challenge). The existence of a First Amendment claim does not "render inapplicable the rule that a federal court should not extend its invalidation of a statute further than necessary to dispose of the case before it." *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 502 (1985).

### A. Plaintiffs are not likely to succeed on the merits

As will be discussed in more detail later, the Plaintiffs are not likely to succeed on the merits. The amended AS 11.61.128 is narrower than the other statutes found unconstitutional described by the Plaintiffs. Because of its restricted nature, it will pass First Amendment and Commerce Clause muster. The statute does not only require that the material be harmful to minors, it also requires that the material fit into enumerated categories. Further, the phrase "harmful to minors" is defined according to Supreme Court of the United States precedent.

### B. Plaintiffs will not suffer irreparable harm without an injunction

AS 11.61.128 was originally enacted in 2005. The original statute prohibited a person from knowingly distributing "by computer" specific indecent material to minors. None of the current plaintiffs or any other entity brought suit alleging that this statute infringed on their constitutional rights. None of the current plaintiffs have alleged to suffer actual harms from this statute. The Plaintiffs state that their harm is a chilling effect caused by the statute because of the prevalence of their businesses on the internet. *See Plaintiffs' Memorandum* at 8. However, it

Opposition to Motion for Preliminary Injunction
*American Booksellers Foundation for Free Expression et al v. Sullivan*
U.S. District Court of Alaska No. 3:10-cv-00193-RRB
Page 4 of 17

was the original statute in 2005 that criminalized this sort of activity and it did not chill the Plaintiffs' web-based activity.

"A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief." *Lydo Enterprises, Inc. v. City of Las Vegas*, 745 F.3d 1211, 1213 (9th Cir. 1984). Because the Plaintiffs did not bring suit against the original statute, it is unpersuasive for them to now argue that they need speedy action. The lack of a need for a preliminary injunction is also supported by the fact that none of the Plaintiffs have been charged with violating this statute since its enactment. Rather, four individuals not affiliated with any of the plaintiffs have been charged since the enactment of AS 11.61.128. An example of the type of conduct prosecuted under this statute is in case 3AN-06-5714 CR were Joseph Benedicto was charged with violating AS 11.61.128 after he used the internet to send a picture of himself holding his penis to a person he thought was a 14 year old girl. Another example is in case 3AN-07-38 CR, where James Moore was charged with violating AS 11.61.128 after he used a web cam to show himself masturbating to a person he thought was a 14 year old girl. In these cases, the defendants distributed the material, knowing the content of the material, to someone they thought was a minor. None of the Plaintiffs have alleged that these acts are constitutionally protected or that they wish to engage in this type of conduct. The statute was designed and is employed in a way to stop predators from sexually grooming children and should be allowed to be used this way while the complaint is pending.

    C.    **The harm to the Defendant in granting the injunction exceeds that which the Plaintiffs would suffer if the injunction were denied**

AS 11.61.128 is designed to prosecute those predators who use pornography to groom children for sexual abuse. *See* SB 222, 26th Legislature (hearing on June 25, 2010); HB 298,

Opposition to Motion for Preliminary Injunction
*American Booksellers Foundation for Free Expression et al v. Sullivan*
U.S. District Court of Alaska No. 3:10-cv-00193-RRB
Page 5 of 17

26th Legislature (hearing on June 25, 2010). Without this statute, the State would have to wait until a child was actually sexually assaulted before intervening. Thus, the harm faced by the State is not merely an inability to prosecute, but actual harms caused to actual children. The State would be severely hampered if this tool was taken away from them during the pendency of this complaint. Because the electronic version of this statute has been law for the past five years without any chilling effect to the Plaintiffs or any actual harm suffered by them, their harm from denying the injunction is minimal or non-existent.

     D.     **The preliminary injunction would harm the public interest**

The public has an interest in protecting minors from sexual predators. This statute is designed to allow the State to arrest and prosecute a predator for grooming behavior before the actual abuse occurs. It is never in the public's interest for the State to wait to act until a child has already been molested before acting.

In summary, all factors favor denying the motion. This is especially true given that the Plaintiffs have not suffered any harm from the statute and granting the injunction would harm the Defendant and the public interest more than it would benefit the Plaintiffs.

**II.**     **The Statute Does Not Violate the First Amendment**

The First Amendment is one of the pillars of the Constitution, but that does not require every law that regulates speech to fall in its shadow. Courts should not be swayed by a fear of regulating speech especially when a court is examining a facial challenge. A court considering a facial challenge must strike a balance between the competing interests of protecting the exercise of free speech rights with the potential harm in invalidating a statute that may be constitutional in some of its applications. *United States v. Williams*, 553 U.S. 285, 292 (2008). Invalidating a statute because it is deemed overbroad is "strong medicine" and should not be casually

Opposition to Motion for Preliminary Injunction
*American Booksellers Foundation for Free Expression et al v. Sullivan*
U.S. District Court of Alaska No. 3:10-cv-00193-RRB
Page 6 of 17

employed. *Id.* at 293. Statutes should be construed in a manner to avoid constitutional problems. *Hooper v. California*, 155 U.S. 648, 657 (1895)("every reasonable construction must be resorted to, in order to save a statute from unconstitutionality.").

In Alaska, statutory interpretation is based on: "(1) the plain meaning of the statute; (2) the legislative purpose of the statute; and (3) the intent of the statute." *W. Star Trucks v. Big Iron Equip.*, 101 P.3d 1047, 1050 (Alaska 2004). As such, it is critical to the court's analysis to consider the intent of the legislature in amending AS 11.61.128. Here, the legislature's intent was to criminalize the grooming of children for sexual abuse either online or in person. *See SB 222*, 26th Legislature (hearing on June 25, 2010); *HB 298*, 26th Legislature (hearing on June 25, 2010). There was no intent evidenced in the legislative process to criminalize general websites of the type concerning to the Plaintiffs.

AS 11.61.128 is constitutional and survives even a strict scrutiny analysis. Under this scrutiny, the Defendant can show that the statute furthers a compelling interest and is narrowly tailored to achieve that interest. *See Citizens United v. Fed. Election Comm'n*, 130 S.Ct 876, 898 (2010). Here, the State has a compelling interest in the well-being and safety of its youth. *Ginsberg v. State of N.Y.*, 390 U.S. 629, 640 (1968); *see also T.P. v. Dep't of Children and Family Services*, 935 So.2d 621, 624 (Fla. App. 3 Dist. 2006)(recognizing that "the State has a compelling interest in protecting all its citizens – especially its youth – against the clear threat of abuse, neglect and death."); *State v. Booker*, 292 Wis.2d 43, 60 fn. 7 (Wis. 2006)(noting that "the language of the statute reflects the state's compelling interest to protect the well-being of its youth by examining the nature of the materials."); *Freeman v. Com.*, 288 S.E.2d 461, 465 (Va. 1982)(holding that "the state has a compelling interest, one central to its right to survive, in protecting its children from treatment it determines to is physically or psychologically injurious

Opposition to Motion for Preliminary Injunction
*American Booksellers Foundation for Free Expression et al v. Sullivan*
U.S. District Court of Alaska No. 3:10-cv-00193-RRB
Page 7 of 17

to youth."). The State's specific interest is preventing predators from using pornography to groom children for sexual abuse by adults. *See SB 222*, 26th Legislature (hearing on June 25, 2010); *HB 298*, 26th Legislature (hearing on June 25, 2010).

AS 11.61.128 is narrowly tailored and the least restrictive means to achieve the State's compelling interest. First, it does not impede the distribution of all material that might be deemed harmful to minors. It only affects those materials that fall within the specifically enumerated categories. Second, "harmful to minors" is a defined term that limits the reach of the statute. The material that falls in one of the enumerated categories must appeal to the prurient interest in sex for minors, have no serious merit for minors and depict the conduct in a way that is patently offensive. As such, this is not the type of statute that encompasses the selling of books that teach minors about their bodies or maternity photographs. This is in contrast with the recently decided case where the Ninth Circuit for the Court of Appeals struck down a statute that did not have the "harmful to minors" element found in Alaska's statute. *See Powell's Books, Inc. v. Kroger*, No. 09-35153, 09-35154 (9th Cir. Sept. 20, 2010). The issue is not whether some person would find some type of material harmful to minors in some general sense, but whether the specific material describes enumerated activity that meets the statutory definition of "harmful to minors" and that the distributor knows this. The issue is not whether sex is discussed or depicted on the internet, but whether it is done in such a way that it is without any type of merit and patently offensive. These limitations restrict the reach of the statute.

Plaintiffs incorrectly argue that the statute is not narrowly tailored because the state already has AS 11.41.452 at its disposal. AS 11.41.452 prohibits the online enticement of a minor. The Plaintiff's argument ignores that AS 11.61.128 is designed to combat grooming minors for sexual molestation rather than the enticement of minors over the internet. AS

Opposition to Motion for Preliminary Injunction
*American Booksellers Foundation for Free Expression et al v. Sullivan*
U.S. District Court of Alaska No. 3:10-cv-00193-RRB
Page 8 of 17

11.41.452 does not prohibit providing minors with pornography so that they will become more willing to acquiesce to sexual molestation by an adult. Without AS 11.61.128, sexual predators could legally email hard-core pornography to children. Without AS 11.61.128, sexual predators could legally distribute Xeroxes of hard-core pornography in children's cubbies at school. The existence of AS 11.41.452 is separate from the goals and interests of AS 11.61.128.

No similar statute that is as narrowly tailored as AS 11.61.128 has been struck down by a court as unconstitutional. The Plaintiffs incorrectly compare this statute to much broader statutes that were rightfully invalidated. In *Reno v. ACLU*, 521 U.S. 844 (1997), the Supreme Court of the United States held that the Communications Decency Act of 1996 abridged the First Amendment. *Id.* at 849. However, this does not mean that states can not regulate the type of material that is exposed to minor children. Rather, it means that the states must be more mindful of the vagueness concerns that so troubled the Court. First, the Court was concerned that the lack of definitions in the CDA would provoke uncertainty and it increased the likelihood that the CDA was not carefully tailored. *Id.* at 871. Second, the Court found the CDA vague because it did not meet the obscenity standard already established in *Miller v. California*, 413 U.S. 15 (1973). *Reno*, 521 at 872-74.

In *Miller*, the Supreme Court of the United States set forth a three-part test for determining whether expressive material is obscene and not entitled to First Amendment protection. The *Miller* test asks: (1) whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest; (2) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (3) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. *Miller*, 413 U.S. at 24. However, the

Opposition to Motion for Preliminary Injunction
*American Booksellers Foundation for Free Expression et al v. Sullivan*
U.S. District Court of Alaska No. 3:10-cv-00193-RRB
Page 9 of 17

Court has also recognized that what is not obscene for adults may still be considered obscene for minor children. *See Ginsburg v. New York*, 390 U.S. 629, 631 (1968)(holding constitutional a statute forbidding the sale to children sexually explicit material that was not obscene for adults).

Here, AS 11.61.128, taken as a whole, is not nearly as vague as the CDA and so does not run afoul of the First Amendment. The amended statute's definition of "harmful to minors" conforms with the *Miller-Ginsburg* test. As such, it is unlike the recently invalidated Oregon statute. *See Powell's Books, Inc. v. Kroger*, No. 09-35153, 09-35154 (9th Cir. Sept. 20, 2010). First, "harmful to minors" only applies to those materials that depict the enumerated conduct: sexual penetration; the lewd touching of a person's genitals, anus, or female breast; masturbation; bestiality; the lewd exhibition of a person's genitals, anus or female breast; or sexual masochism or sadism. Further, comparing the definition of "harmful to minors" with the *Miller-Ginsburg* test reveals its near-sameness:

| *Miller-Ginsburg* test | AS 11.61.128(e) |
|---|---|
| 1) the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest of minors; | 1) the average individual, applying contemporary community standards, would find that the material, taken as a whole, appeals to the prurient interest in sex for persons under 16 years of age; |
| 2) the work depicts or describes, in a patently offensive way with regard to minors, sexual conduct specifically defined by the applicable state law; | 2) the material depicts actual or simulated conduct in a way that is patently offensive to the prevailing standards in the adult community as a whole with respect to what is suitable for persons under 16 years of age; |
| 3) the work, taken as a whole, lacks serious literary, artistic, political, or scientific value for minors. | 3) a reasonable person would find that the material, taken as a whole, lacks serious literary, artistic, educational, political, or scientific value for persons under 16 years of |

Opposition to Motion for Preliminary Injunction
*American Booksellers Foundation for Free Expression et al v. Sullivan*
U.S. District Court of Alaska No. 3:10-cv-00193-RRB
Page 10 of 17

age.

This depiction demonstrates that Alaska's definition of "harmful to minors" comports with the *Miller-Ginsburg* test when read in conjunction with the entire statute that limits what materials are subject to this definition.

The State agrees with the Plaintiffs that minors have First Amendment rights in many circumstances. However, the State disagrees with the Plaintiffs that because a type of material only has value for older minors, that renders the statute unconstitutional. When examining whether material is harmful to minors, the Court should not divide the class of minors into groups based on age. Rather, "if a work is found to have a serious literary, artistic, political, or scientific value for a legitimate minority of normal, older adolescents, then it cannot be said to lack such value for the entire class of juveniles taken as a whole." *Am. Booksellers Ass'n v. Virginia*, 882 F.2d 125, 127-28 (4th Cir. 1989); *see also Am. Booksellers Ass'n v. Webb*, 919 F.3d 1493, 1505 (11th Cir. 1990). Thus, for constitutional analysis, it is irrelevant that a material may not have value for the youngest minors as long as it has value for some of the minors.

Finally, the less-restrictive means of filters suggested by the Plaintiffs do not achieve the State's compelling interest of keeping its youth safe from sexual predators. First, the Plaintiffs presented no evidence on the actual effectiveness of these filters. Second, the State does not disagree that parents should also have an interest in the well-being of their children. However, because a parent fails to install such filters either because of neglect, inability, or some other reason, that does not mean that the State's interest in the well-being of the child disappears. Rather, the State has an interest separate from the parents in protecting minors and cannot abdicate this responsibility in the hope that parents will adequately safeguard their children from online grooming. *See Reno v. ACLU*, 521 U.S. 844, 881 (1997)(noting that it is impossible to

Opposition to Motion for Preliminary Injunction
*American Booksellers Foundation for Free Expression et al v. Sullivan*
U.S. District Court of Alaska No. 3:10-cv-00193-RRB
Page 11 of 17

know that every parent has enacted adequate screens on their computers for indecent material). Further, it is doubtful that, even if these controls worked, they would prevent a predator from handing a child a pornographic magazine, for example.

### III. The Statute Does Not Violate the Commerce Clause

The internet is undeniably an incident of interstate commerce and the Defendant does not dispute that. However, the presence of the internet in a state statute does not automatically mean that the statute burdens interstate commerce. *See People v. Hsu*, 82 Cal. App. 4th 976, 983 (Cal. App. 1. Dist. 2000). Absent conflicting federal legislation, states retain their authority under the general police powers to regulate matters of legitimate local concern, even if interstate commerce may be affected. *Lewis v. BT Investment Managers, Inc.*, 447 U.S. 27, 36 (1980). The test to determine if a state statute violates the commerce clause is:

> Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. . . If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.

*Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

Statutes affecting public safety carry a strong presumption of validity. *Bibb v. Navajo Freight Lines*, 359 U.S. 520, 524 (1959). As already discussed, Alaska has a compelling interest in protecting minors from harm. Even though the internet is affected by this statute, the effect on interstate commerce is minimal. Further, this minimal intrusion is necessary for the State to promote its compelling interest.

The State is unable to effectively address the problems associated with electronic

Opposition to Motion for Preliminary Injunction
*American Booksellers Foundation for Free Expression et al v. Sullivan*
U.S. District Court of Alaska No. 3:10-cv-00193-RRB
Page 12 of 17

distribution of pornography to minors without touching on the Internet. *See Rousso v. State*, 204 P.3d 243, 251 (Wash. App. Div. 1. 2009)(identifying that "it is doubtful that the State can effectively address the problems associated with Internet-based gambling without regulating the internet itself."). Here, the State is unable to effectively prevent underage Alaskan residents from receiving pornography via the internet without directly regulating the transmission of such materials. As such, the State cannot prevent Internet-based sexual predator grooming if it is precluded from enacting any regulation that touches upon the Internet. For purposes of the *Pike* balancing test, the State has established that regulating transmission of pornography to minors furthers important interests and that these interests cannot be adequately protected without regulating the Internet. The Plaintiffs arguments otherwise are unpersuasive.

First, the Plaintiffs claim that AS 11.61.128 regulates commercial activity that occurs wholly outside of Alaska. In addressing a similar argument, the Hsu court in California responded,

> When [the California law] is harmonized with the entire California penal scheme, it does not effectively regulate activities beyond California. California prosecutes only those criminal acts that occur wholly or partially within the state. (§§ 27, 777, 778, 778a, 778b.) Statutes "must be construed in the light of the general principle that, ordinarily, a state does not impose punishment for acts done outside its territory." [The California law] makes no reference to place of performance, so courts must assume the Legislature did not intend to regulate conduct taking place outside the state. Given the historical and statutory limitations on California's ability to prosecute, [the California law] cannot be enforced beyond what is jurisdictionally allowed. Consequently, such enforcement would not burden interstate commerce. Accordingly we reject Hsu's commerce clause challenge.

*People v. Hsu*, 82 Cal.App.4[th] 976, 983-84 (Cal. App. 1. Dist. 2000). In Alaska, AS 12.05.010 restricts the court's jurisdiction to crimes that are consummated in-state. Thus, conduct that occurs wholly outside of Alaska would not be regulated by state statutes.

Second, the Plaintiffs claim that AS 11.61.128 burdens a type of commerce that

Opposition to Motion for Preliminary Injunction
*American Booksellers Foundation for Free Expression et al v. Sullivan*
U.S. District Court of Alaska No. 3:10-cv-00193-RRB
Page 13 of 17

inherently requires a nationally uniform regulation. This is an argument that a court in New York accepted, but that is not the end analysis, nor is it binding authority. *See American Libraries Ass'n v. Pataki*, 969 F.Supp 160 (S.D.N.Y. 1997). Because, "[u]nder this view, practically any state law that affects the Internet is unconstitutional, because 'the Commerce Clause precludes a state from enacting legislation that has the practical effect of exporting that state's domestic policies.'" *Rousso*, 204 P.2d at 252. The *Pataki* approach has been persuasively and widely criticized as resting "on an impoverished understanding of the architecture of the Internet," "misread[ing] dormant Commerce Clause jurisprudence," and "misunderstand[ing] the economics of state regulation of transborder transactions." Jack L. Goldsmith & Alan O. Sykes, *The Internet and the Dormant Commerce Clause*, 110 YALE L.J. 785, 787 (2001)).

Here, the regulation of the internet is not excessive. Indeed, it is worth noting that some of the prohibited conduct at issue here - the knowing transmission of obscene material to minors over the internet is prohibited by federal law. *See* 18 U.S.C.A. 1470. The internet, as a technological medium for transmitting information, is not so novel that special rules need apply, or that it should render unconstitutional any state law that subjects it to regulation. This being so, the court should decline to follow those cases that view the Internet as entirely off-limits to state regulation. Rather, the question is whether the burdens on commerce that the regulation imposes are "clearly excessive" in relation to the interests that the regulation seeks to serve. Ultimately, given the importance of the State's interests in protecting its citizens from the ills associated with sexual predation, and the relatively small cost imposed on businesses by complying with this statute, the Plaintiffs have failed to meet their burden of showing that AS 11.61.128 is "clearly excessive."

**IV. The Statute Has An Appropriate Scienter Requirement**

Opposition to Motion for Preliminary Injunction
*American Booksellers Foundation for Free Expression et al v. Sullivan*
U.S. District Court of Alaska No. 3:10-cv-00193-RRB
Page 14 of 17

Some scienter is required when the government regulates obscene material, but the Court has not specified the required level. In *Smith v. California*, 361 U.S. 147 (1959), the Court stated:

> We need not and most definitely do not pass today on what sort of mental element is requisite to a constitutionally permissible prosecution of a bookseller for carrying an obscene book in stock; whether honest mistake as to whether its contents in fact constituted obscenity need be an excuse; whether there might be circumstances under which the State constitutionally might require that a bookseller investigate further, or might put on him the burden of explaining why he did not, and what such circumstances might be.

*Id.* at 154-55. Thus, the level of scienter required is a matter that is left to individual states to determine.

Here, this is not a strict liability statute regarding the content of the materials. Rather, the State is required to prove that the distributor of the materials knew that they contained depictions of sexual penetration, the lewd touching of a person's genitals, anus, or female breast, masturbation, bestiality, the lewd exhibition of a person's genitals, anus, or female breast, or sexual masochism or sadism. In *Strane v. State*, 61 P.3d 1284 (Alaska 2003), the Supreme Court of Alaska held that the culpable mental state of "knowingly" applied to both the defendant's conduct and the circumstances. *Id.* at 1288. The statute at issue in *Strane* is similarly worded to AS 11.61.128. The statute in *Strane* declared, "A person commits the crime of violating a protective order if the person is subject to a protective order containing a provision listed in AS 18.66.100(c)(1)-(7) and knowingly commits or attempts to commit an act in violation of that provision." *Id.* at 1286. The Supreme Court held that the State was required to prove "that Strane's actions were knowing, that he knew of the restraining order's existence, and that he was aware of its literal requirements." *Id.* at 1292. Similarly, in AS 11.61.128, the "knowingly" element includes distribution and knowing that the distributed material contains the enumerated

Opposition to Motion for Preliminary Injunction
*American Booksellers Foundation for Free Expression et al v. Sullivan*
U.S. District Court of Alaska No. 3:10-cv-00193-RRB
Page 15 of 17

conduct. Under this construction of the statute, even the Plaintiffs concede constitutionality. *See Plaintiffs' Memorandum* at 1. See also *U.S. v. Buckland*, 289 F.3d 558, 564 (9th Cir. 2002)(examining the principle of statutory construction counseling courts to interpret a statute in favor of constitutionality). This reading of the statute comports with the actual use of the statute where no case has been brought against a defendant who did not know the content of the material he was distributing.

Even if this court declines to follow the *Strane* analysis, this is still not a strict liability statute regarding the content of the materials. While there is no scienter requirement for the content of the materials in the statute, another statute provides the mental state. AS 11.81.610(b) provides that, "if a provision of law defining an offense does not prescribe a culpable mental state, the culpable mental state that must be proved with respect to (1) conduct is 'knowingly;' and (2) a circumstance or a result is 'recklessly.'" Recklessly is defined in AS 11.81.900(a)(3) as:

> A person acts "recklessly" with respect to a result or to a circumstance described by a provision of law defining an offense when the person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstances exists; the risk must be of such a nature and degree that disregard of it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation; a person who is unaware of a risk of which the person would have been aware had that person not been intoxicated acts recklessly with respect to that risk.

This comports with the precedent that some scienter is required, but that it is up to the individual states to determine what level is necessary. This does not require a bookseller or librarian to do anything out of the ordinary – rather they must conform with what a reasonable person would do in such a situation. As already discussed, the materials at issue here are not every possible book, movie, or magazine. Rather, it is only those materials that already fall into the enumerated

Opposition to Motion for Preliminary Injunction
*American Booksellers Foundation for Free Expression et al v. Sullivan*
U.S. District Court of Alaska No. 3:10-cv-00193-RRB
Page 16 of 17

categories identified in section (a) of the statute and that meet the constitutional "harmful to minors" test.

In conclusion, AS 11.61.128 is constitutional and for the above-state reasons, the motion for preliminary injunction should be DENIED. To charge a person with violating this statute, the State must prove (1) that a person over 18 years of age (2) knowingly distributed (3) materials that the person knew depicted the enumerated conduct (4) and that meet the constitutional test for harmful to minors (5) to a person under 16 years of age or who the distributor believed was under 16 years of age.

DATED this 22nd day of September, 2010.

DANIEL S. SULLIVAN
ATTORNEY GENERAL

By: s/Marika R. Athens
    Assistant Attorney General
    Department of Law
    Office of Special Prosecutions and Appeals
    310 K St., Suite 308
    Anchorage, Alaska 99501
    Telephone: 907-269-6250
    Facsimile: 907-269-7939
    Email: marika.athens@alaska.gov

CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of September, 2010, a
copy of the foregoing document was served electronically on:

D. John McKay

s/Marika R. Athens
Marika R. Athens

Opposition to Motion for Preliminary Injunction
*American Booksellers Foundation for Free Expression et al v. Sullivan*
U.S. District Court of Alaska No. 3:10-cv-00193-RRB
Page 17 of 17